McGREGOR W. SCOTT
United States Attorney
ANA MARIA MARTEL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900
Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. THEODORE JOHN KACZYNSKI, Defendant. | No. CR S-96-259 GEB<br><br>DATE: April 24, 2006<br>TIME: 10:00 a.m.<br>Courtroom: 10, 13th Floor<br>Judge: Burrell |

UNITED STATES' STATUS REPORT

On July 21, 2005, the Ninth Circuit Court of Appeals ordered, *inter alia,* that the United States present to this Court, in a timely manner, "a commercially reasonable plan to dispose of the property at issue, the principal purpose of which shall be to maximize monetary return to the victims and their families" or to return the property to Kaczinski. (416 F.3d 971, 977 (9th Cir. 2005). On September 16, 2005, the Court appointed Steven A Hirsch and his firm as *pro-bono* counsel to the named victims and their families. It also ordered "the United [to] cooperate with Keker & Van Nest to facilitate the carrying out of the firm's responsibilities as amicus counsel...."

The United States has endeavored to cooperate with Mr. Hirsch, who represents Mrs. Susan Mosser, Mrs. Connie Murray, Dr. Charles Epstein, and Mr. Gary Wright[1], hereinafter "the

[1] The amended judgment in the above-captioned case ordered that restitution be paid to Dr. Charles Epstein in the sum of $200,000; to Mrs. Susan Mosser in the sum of Eleven Million

Named Victims".

Since the United States is enforcing the criminal restitution lien for the benefit of the Named Defendants, to the extent that the United States can satisfy the Named Defendants' wishes without violating the Ninth Circuit's mandate, it will endeavor to do so. Appended hereto as Exhibit 1 is a copy of the Named Victims proposal. Unfortunately, the Named Victims do not speak with a unified voice.

I.

**The United States Response to Mrs. Murray's and Mr. Epstein's Proposal**

Two of the victims, Mrs. Murray and Mr. Epstein, propose the following:

- That the United States gather **all** of the Defendant's writings, including the copies and originals held by the University of Michigan. The Named Victims request that any legal fees and costs incurred by the United States in gathering said materilas be borne by the United States. The United States finds this request reasonable and will endeavor to do so, if the Court so orders;
- That the United States exclude from any sale or auction "any writings describing the victims' injuries or providing specific, usable information to make bombs". To the extent that the Court approves this exclusion, the United States will do so;
- That the victim-specific writings be offered at no cost to the specific victim or that victim's survivors, regardless of whether that victim is named in the restitution order. To the extent that the Court approves this disposition of the property, the United States is willing to do so;
- That the United States gather all of Kacsynski's belonging "other than those in his prison cell." The United States has all of Kaczinski's personal property, other than anything he

---

Dollars; to Mrs. Connie Murray in the sum of Two Million Dollars; and to Mr. Gary Wright in the sum of $211,000. The Court of Appeals' decision makes it clear that the proceeds from the sale of Kaczinski's property is to be for the benefit of the four named victims and their families. *See,* 416 F.3d at 977 n.11. Unfortunately, the other victims, such as Mr. Gelenter, who earlier contacted the Court, are not represented in this matter since it involves the enforcement of the restitution order and lien.

has acquired since his arrest, in its possession;

- That the United States refrain from auctioning "any belongings which are materials that Kaczinski used or planned to use for making bombs or any firearms." The United States is willing to do so and the Ninth Circuit's order is premised on Kaczinski's representations that he did not request the return of bomb making-material;
- That the United States auction the non-bombmaking related personal property and the writings in two stages: 1) that the personal property and writings in its possession be auctioned quickly; and 2) that the writings in the possession of the University of Michigan be sold at a later auction, after those are returned to the United States. While the United States is willing to sell the non-bombmaking related personal property as soon as the Court approves the appointment of the receiver and his plan of sale, the United States believes that in order to maximize the value of the writing to be sold, it must obtain the return of all copies of Kaczynski's writings provided to the University of Michigan by Kaczynski's counsel before selling the same. The United States believes that the value of the writings to be sold will be depressed if copies of the same are available to the public at the University of Michigan and the buyers cannot be assured of exclusivity;
- That the United States consult with the Named Victims before publizing the sale or auction but allowing the United States the right to exercise its discretion to maximize value. The United States is willing to reasonably consult.
- That the victims be able to "credit bid" [2] at the sale or auction and that the Named Victims make a joint bid – a bid on which all victims agree. The United States has no opinion on how the victims wish to credit bid: jointly or severally or not all. It will be happy to continue warehousing the items until receiving further instructions from the Named Victims jointly or from the Court, if the Named Victims disagree if the Named Victims are the successful bidders at the auction.

---

[2] Creditors at foreclosure actions bid their debt or a portion thereof as a credit at the sale– without paying any money. The Defendant/judgment creditor's debt is reduced by the amount of the creditor's bid if the creditor is the successful bidder at the sale.

- However, to the extent that the Named Victims wish to reduce Kaczinski's debt to them by giving him credit for the value of his belongings or writings, the United States requests that they do so before the Receiver is engaged. In order words, that a private sale exclusively open to the Named Victims be held. Congress has not appropriated funds for the United States to adverstize and sell any criminal defendant's property, including Kaczinski's. As with a United States Marshal's sale, the cost of the sale property to satisfy a restitution lien must be paid from the proceeds of the sale. The costs of sale are paid first, then the proceeds are distributed to the creditors *pro rata* or in the order of priority. If a receiver is appointed by this Court to sell Kaczinski's property, the receiver will have to be paid by a percentage of the sale proceeds, an hourly rate and reimbursement of out-of- pocket expenses or a combination. Those payments will have to come from the sale proceeds;
- If the Named Victims wish to set a minimum bid for the personal belongins and writings to be sold and require that these be sold as a lot, if the Court approves their request, the United States will acceed to their wishes;
- The United States has no appropriations from which to pay the adverstising and costs of any auction. If a receiver is appointed, he will pay those expenses with the understanding that he will paid for his time and reimbused his expenses;
- Any proceeds received from the sale of Kaczinski's property will be deposited with the Clerk of the Court. Pursuant to the Court's order, the proceeds should be paid by the Clerk of the Court to the Named Victims *pro rata*.

II.

**The Unites States' Response to Mrs. Mosser's Proposal**

It appears from the Named Victims' plan that Mrs. Mosser would also restrict the sale of the personal property and writings as described in the first three paragraphs of Section I. However, Mrs. Mosser would prefer that United States first attempt to sell the writings and personal belongins to museums or similar institutions that "would not highlight Kaczinski as ... anarchist/intellectual but as an evil man who disguised himself as an anarchist/intellectual in

order to kill people." Mrs. Moser requests that the materials first be offered to said instituions as a cash sale. However, if the interested institutions cannot afford to purchase the same, that the materials be exhibited for a fee, which half of the proceeds going to the vicitims and half to the FBI for the benefit of wounded agents or the survivors of agents killed in the line of duty.

Mrs. Mosser requests that any items which cannot be housed in a museum as she specifies be auctioned but that the publicity accompanying said auction not be sensasionalistic.

If the Court approves Mrs. Mosser's proposal, the United States will attempt to comply with her wishes. In that regard, the FBI Museum is willing to house Kaczinski's belongings and the United States to archive all and display some of the writings. However, the FBI does not have appropriated funds to pay the Named Victims for the materials and it does not charge visitors to its museum.

III

**The Unites States' Response to Ms. Wright's Proposal**

Mr. Wright agrees with the other Named Victims to restricting the sale of the writings and the personal property as described in the first three paragraphs of Section I. However, Mr. Wright wants to maximize the proceeds from the sale; or, if the Named Victims acquire the property by credit bid, he wants no restriction on his disposition of his share of the property.

IV.

As the Court can see, the Named Victims do not agree on the disposition of the property. The United States is willing to proceed to consolidate the writings by asking the University of Michigan to turn over the writings to the United States and, if necessary, seeking a court order that they be compelled to do so. The United States is also willing to submit to the Named Victims and Defendant's counsel a list of the bomb-making materials which should be excluded from any sale. Finally, the United States is willing to segregate the writings as requested.

However, without further direction from the Court, the United States does not know whether it should seek the appointment of a receiver and ask the receiver to prepare a plan for sale. It needs further direction from the Court.

Dated: April 17, 2006

McGREGOR W. SCOTT
UNITED STATES ATTORNEY

By: \s\ *Ana Maria Martel*
ANA MARIA MARTEL
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers; that on APRIL 17, 2006, she served a copy of **UNITED STATES' STATUS REPORT and EXHIBIT - The Four Restitutionary Victims** by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and its contents in the United States Mail at Sacramento, California.

Addressee(s):

JOHN BALAZS
Attorney at Law
916 - 2nd Street, 2nd Floor
Sacramento, CA 95814

STEVEN A. HIRSCH
Keker and Van Nest
710 Sansome Street
San Francisco, CA 94111-1704

\s\ *Jocelyn M. Trujillo*
JOCELYN M. TRUJILLO, Legal Asst.