KEKER & VAN NEST, LLP
STEVEN A. HIRSCH - #171825
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Pro Bono Amicus Counsel* in
Support of Charles Epstein, Susan
Mosser, Connie Murray, and
Gary B. Wright

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>THEODORE JOHN KACZYNSKI,<br>Defendant. | Case No. CR-S 96-0259-GEB-GGH<br>**THE VICTIMS' STATEMENT CONCERNING AUCTION OF DEFENDANT'S PROPERTY**<br>Date: July 28, 2006<br>Time: 11:00 A.M.<br>Hon. Garland E. Burrell, Jr. |

Kaczynski's victims join in the Government's submission, filed this day, and also add the following. (A separate statement by Gary B. Wright appears at the end of this document.)

**1. Need to redact Kaczynski's writings.**

In the plan submitted to the Court in April, the victims proposed to use "credit bids" to remove dangerous and undesirable writings from the proposed property sale. But at the June 16, 2006 hearing, the Court expressed skepticism regarding that notion for two reasons: *first*, because credit bids do not result in compensation for the receiver; and *second*, because the Court was unsure "whether or not credit bidding is within the rationale of the Ninth Circuit's remand order."[1] Credit bidding (and the subsequent handling and disposition of property acquired by credit bidding) also would have required a degree of coordination and concensus among the

[1] Reporter's Transcript, Status Conference, Friday, June 16, 2006 ("Tr.") at 12.

victims that cannot be realistically expected.

The revised plan now avoids credit bidding (except where an item offered for sale fails to sell). But it is imperative that dangerous or undesirable writings be removed by some other means prior to any public sale. Accordingly, the revised plan requires prior redaction of the following items:

(1) all writings that identify specific victims or that discuss their injuries;

(2) all writings that identify intended future victims;

(3) all writings, diagrams, and schematics about bomb-making and related experiments;

(4) all writings that purport to instruct persons on how to commit crimes.

Prior redaction will not unreasonably delay the sale. In preparing for Kaczynski's trial, the FBI created an electronic database of Kaczynski's writings and also created various subject-matter indices of those writings, which will allow the FBI to zero in on the objectionable writings and to redact them. The FBI estimates that, using these resources, the redaction will take less than 60 days.

These redactions are essential to protect the victims' privacy as well as the feelings and sensibilities of their loved ones. Redaction also is essential for law-enforcement purposes. Otherwise, the sale would pose a danger to the remaining people on Kaczynski's "hit list" and might put explicit instructions about bomb design and assassination techniques into the hands of criminals and terrorists.

**2. The proposed plan is timely.**

At the hearing on June 16, 2006, the Court directed the Government to file a pleading that, among other things, explains why its sale plan "should be deemed timely . . . in accordance with the rationale of the Ninth Circuit decision."[2] The victims wish to be heard on that issue.

The Ninth Circuit's July 21, 2005 order required the Government to submit a plan for disposing of Kaczynski's property "within a reasonable period of time . . . ." *United States v.*

[2] Tr. at 22:4-9.

*Kaczynski*, 416 F.3d 971, 977 (9th Cir. 2004). Nearly two months later, on September 16, 2005, the Ninth Circuit appointed the undersigned counsel as pro bono amicus counsel to represent the victim perspective. Obviously, no plan could have been proposed until some weeks or months after that date.

On November 11, 2005, Kaczynski's counsel submitted a settlement offer to the victims. The victims declined the offer a few days later.

Between September 15, 2005 and April of 2006, the Government and the victims worked closely to come up with general principles for a sale plan. Also, pro bono counsel had extensive discussions and e-mail correspondence with the victims. The substance of those communications is, of course, privileged. Suffice it to say that this unusual—perhaps unprecedented—representation has involved numerous difficulties unlike anything that the Court or the undersigned counsel ever has experienced. Several aspects of the representation have posed unique problems and have required an extensive time commitment:

- Understandably, the very subject of the property sale is fraught with emotional complexity for the victims, as the sale threatens their privacy interests and provokes terrible memories, yet represents their last chance to obtain compensation and, in a larger, sense, justice.

- The victims are not lawyers, and counsel has had to explain many complex legal propositions to them in lengthy e-mails.

- Deciding how to apportion responsibilities between the Government and the victims was, and to some extent remains, a hugely complicated and controversial task.

- The situation also was greatly complicated by the fact that the victims hold vastly different percentages of the total restitutionary award. "Deciding how to decide" was therefore an ever-present issue; and the differing impact of any given method of sale on the four victims had to be considered as well.

- Deciding whether and how pro bono counsel could present the victims' divergent views and interests to the Court was itself a major task. And it has been a complex task to disclose fully and frankly to the victims how each proposed course of action would affect their divergent interests, either negatively or positively.

By April of 2006, the Government and the victims had settled upon a set of general principles for a sale that they believed to be consistent with the Ninth Circuit's mandate. However, the Court made it clear at the June 16, 2006 status conference that it did not find the

Government's plan sufficiently detailed and that some aspects of the plan might not comply with the Ninth Circuit's mandate. In particular, the Court noted that the plan did not specify how the receiver would be compensated.[3] The Court also stated that the plan exceeded the Ninth Circuit's mandate to the extent that it appeared to encompass some property (*e.g.*, post-arrest writings, intellectual-property rights) beyond that actually seized from Kaczynski's Montana cabin in 1996.[4] And as previously mentioned, the Court also expressed skepticism about the concept of credit bidding.

Now, just three weeks later, the Government and the victims have generated a revised plan that satisfies or eliminates all of these concerns.

- The Government has spelled out how it plans to compensate the receiver, and the victims have placed over $7,000 of their *own funds* at the Government's disposal in case the sale does not generate sufficient revenue to compensate the receiver.

- The victims have agreed to exclude post-arrest writings from the sale plan, and to include no explicit provisions in the plan regarding the negotiation of book or movie rights. (The Government has stated that Kaczynski's plea agreement will prevent him from profiting from the sale of his "story.")

- The victims have dropped the idea of credit bidding (except as to items that are offered for sale but fail to sell).

- The victims previously had intended to use credit bidding to take dangerous and undesirable writings out of circulation. Since credit bidding is no longer part of the plan, it becomes imperative that the writings be redacted prior to sale, as discussed above. Some redaction-related delay is therefore unavoidable and reasonable.

Given this chronology and these facts, it cannot be plausibly contended that the Government's sale plan is untimely within the meaning of the Ninth Circuit's order.

[3] Tr. at 10-11.

[4] Tr. at 9, 11.

**3. Separate Statement by Gary B. Wright**

I object to the auction unless I am given ownership and possession, prior to the auction, of the unredacted originals of any pages of Kaczynski's writings that refer specifically to me or to my injuries.

I do not object to the Government's including copies of those pages in the auction, as long as the portions referring to me or to my injuries are redacted on the copies made available for sale.

* * * * *

Respectfully submitted,

Dated: July 7, 2006

KEKER & VAN NEST, LLP

By: /s/ Steven A. Hirsch

STEVEN A. HIRSCH
*Pro Bono Amicus Counsel* in Support of Charles Epstein, Susan Mosser, Connie Murray, and Gary B. Wright