JOHN BALAZS, Bar #157287
Attorney At Law
916 2nd Street, 2nd Floor
Sacramento, California 95814
Telephone: (916) 447-9299
John@Balazslaw.com

Attorney for Defendant
THEODORE JOHN KACZYNSKI

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THEODORE JOHN KACZYNSKI,<br><br>Defendant. | No. CR-S 96-0259-GEB-GGH<br><br>DEFENDANT THEODORE JOHN KACZYNSKI'S OBJECTIONS TO THE GOVERNMENT'S PLAN FOR SALE OF HIS PROPERTY<br><br>Date: July 28, 2006<br>Time: 11:00 a.m.<br>Hon. Garland E. Burrell, Jr. |

## I. INTRODUCTION

In an opinion filed one year ago today, the Ninth Circuit remanded to the district court for the government to present "a commercially reasonable plan to dispose of the property at issue, the principal purpose of which shall be to maximize monetary return to the victims and their families." United States v. Kaczynski, 416 F.3d 971, 977 (9th Cir. 2005). "If the government fails or refuses to provide such a plan within a reasonable period of time, or if its plan includes a finding of negligible value or results in a nominal, taxpayer-funded contribution to victim restitution, then the district court is directed to return Kaczynski's property to him." Id.

The government has twice submitted plans that are wildly

inconsistent with the law, with the Constitution, and with the Ninth Circuit's mandate. In doing so, the government has consistently ignored the law cited in Kaczynski's prior pleadings and briefs. Because the government has not submitted a sufficient plan "in a reasonable period of time," the Court should order that Kaczynski's seized property be returned to him.

## II. Specific Objections To The Plan To Sell Kaczynski's Property

The government's plan is deficient in failing to follow applicable law and the Ninth Circuit's mandate on a number of grounds.

### A. Firearms

The government asserts that it is the policy of federal agencies not to return firearms that were seized at the time of the arrest from persons who have been convicted of a felony. This is not true. Felons are barred from personally possessing firearms, but they are not barred from owning them. United States v. Seifuddin, 820 F.2d 1074, 1078-79 (9th Cir. 1987); United States v. Casterline, 103 F.3d 76, 78-79 (9th Cir. 1996), cert. denied, 522 U.S. 835 (1997). Federal agencies typically return firearms to a defendant's family member or friend after a criminal case is over unless the firearm is otherwise forfeitable. Indeed, undersigned counsel has on more than one occasion helped facilitate the return of firearms to a representative of a client after the client was convicted of a felony and his or her case had concluded. Although Kaczynski has cited Seifuddin and Casterline in a number of pleadings, the government cites no authority to support its position and has never attempted to refute Kaczynski's authorities. Therefore, as the government does not intend to sell Kaczynski's firearms, they should be returned to him.

**B. Contraband**

Kaczynski does not seek the return of per se contraband or any bomb-making materials. But the government's proposed contraband sheet lists 100 items, many of which, if not all, are non-contraband items. Even items that could be considered dangerous in some manner cannot be withheld unless the government shows they are per se contraband or forfeitable. See United States v. Ramey, 490 F.Supp. 96 (E.D. Tenn. 1980) (dangerous chemicals). "The person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987) (citing United States v. Wright, 610 F.2d 930, 938 (D.C. Cir. 1979)); United States v. Van Cauwenberghe, 934 F.2d 1048, 1061 (9th Cir. 1991). Thus, the government should be required to show that any item it proposes to forfeit as contraband constitutes contraband per se; otherwise, it should return the property to Kaczynski. "Contraband per se is property the mere possession of which is unlawful" while "[d]erivative contraband [is property that] may be lawfully possessed but which became forfeitable because of unlawful use." United States v. Felici, 208 F.3d 667, 670 (8th Cir. 2000), cert. denied, 531 U.S. 1201 (2001). Derivative contraband may be kept and destroyed by the government only if it institutes a timely forfeiture proceeding concerning those specific properties that it contends are forfeitable under applicable forfeiture statutes. See United States v. Seifuddin, 820 F.2d 1074, 1078-79 (9th Cir. 1987); United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1212 n.13 & 1213 (10th Cir. 2001), and cases cited therein; United States v. Wilson, 540 F.2d 1100, 1104 (D.C. Cir. 1976); United States v. Premises Known As

608 Taylor Avenue, 584 F.2d 1297, 1302 (3d Cir. 1978). Because the government has not filed any forfeiture action, no "derivative" contraband may be retained or forfeited. Rather, any property not shown to be contraband per se should be returned to the defendant.

**C. Credit Bidding**

Although the government and the victims have dropped their original credit-bidding proposals, the victims' statement requests that they be permitted to credit-bid for any item that fails to sell at the proposed auction. This proposal violates the Ninth Circuit's mandate. Any property that does not sell at an auction by definition is of minimal or no value. Under the Ninth Circuit's opinion, any property that is not sold for a profit with the proceeds going to the victims must be returned to Kaczynski. United States v. Kaczynski, 416 F.3d 971, 977 (9th Cir. 2005). Thus, with respect to any property that is not sold at an auction for a profit, the Court should order that the property be returned to Kaczynski.

**D. Writings**

**1. The Government's Proposed Sale of Kaczynski's Original Seized Writings Should Be Rejected As In Violation Of The First Amendment.**

With respect to Kaczynski's writings that were seized from his cabin upon his arrest, the First Amendment and the plea agreement bar the government from selling his original writings.[1] In Kaczynski's appeal, he asked for the return of his original writings and the Freedom to Read Foundation and the Society of American Archivists

---

[1] The government's plan backs off its prior position that it had the right to seize Kaczynski's post-arrest papers and any copies of his pre-arrest writings. As explained in Kaczynski's objections to the government's amended status report, filed May 26, 2006, at 5-10, such a broad seizure would have obviously violated the First Amendment and federal law.

submitted a joint Amici Curiae Brief opposing the government's position to mothball Kaczynski's papers. The Ninth Circuit "decline[d] to reach the First Amendment issue Kaczynski and Amici raised," 416 F.3d 971, 972 n.1, remanding instead on the ground that the government had failed to present a commercially reasonable plan for the sale of his property. Id. at 972, 977.

The First Amendment issue must now be decided before any sale of Kaczynski's seized writings takes place. The First Amendment guarantees not only a right to communicate information and ideas, but also a right to receive information. Klendienst v. Mandel, 408 U.S. 753, 762 (1972) ("It is now well established that the Constitution protects the right to receive information and ideas."); Rossignol v. Voorhaar, 316 F.3d 516 (4th Cir.) (first amendment "protects both a speaker's right to communicate information and ideas to a broader audience and the intended recipients' right to receive that information and those ideas.") (citing Board of Educ. Island Trees Union Free School Dist. No. 26 v. PICO, 457 U.S. 853 (1982)), cert. denied, 124 S. Ct. 135 (2003); United States v. Feeney, 501 F. Supp. 1324, 1328 (D. Col. 1980) ("[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit the government from limiting the stock of information from which members of the public may draw") (quoting Richmond Newspapers, Inc. v. Commonwealth of Virginia, 448 U.S. 555 (1980)). "The fact that the majority of a community may find an idea politically, intellectually, or morally offensive does not shield the idea from first amendment protection." United States v. Richey, 924 F.2d 857, 859 (9th Cir. 1991). When first amendment rights are implicated, governmental action may only limit the speech interests "when compelling government interests outweigh the free expression

interests" at stake. Id.

Here, there is a strong public interest favoring the return of the documents in question to a University library for use by researchers, historians, and the public. The documents have significant social and historical value not only to the press and public, but also to academic researchers and social historians. The underlying criminal case generated extraordinary interest from the press and public. The Unabom Trial Media Coalition v. U.S. Dist. Court, 183 F.3d 949, 952 (9th Cir. 1999) ("Kaczynski's impending trial attracted extraordinary attention from the news media, the general public and crackpots nationwide, and managed to stir up 'deep passions' unusual even for high-publicity trials."). More importantly, the documents at issue are particularly important to researchers and social historians. As the University of Michigan Press Spokesperson Julie Peterson stated,

> the university believed the documents still held by the government were "important historical materials." They're valuable as a resource for many people across the world to do research on social protest."

Kaczynski's Supplemental Brief, filed Oct. 10, 2003, at 4. Such scholarly researchers and historians are generally viewed as equivalent to journalists with respect to the First Amendment, and they are accorded a similar level of First Amendment freedoms:

> Academicians engaged in pre-publication research should be accorded protection commensurate to that which the law provides for journalists. . . . After all, scholars too are information gatherers and disseminators. . . . Just as a journalist, stripped of sources, would write fewer, less incisive articles, an academician, stripped of sources would be able to provide fewer, less cogent analyses. Such similarities of concern and function militate in favor of a similar level of protection for journalists and academic researchers.

Cusumano v. Microsoft, 162 F.3d 708, 714 (1st Cir. 1998).

Neither Kaczynski's First Amendment rights nor those of the

public, scholars, and researchers can be limited unless the government can demonstrate a "compelling reason" for restricting their First Amendment rights. "The Supreme Court has frequently reaffirmed that speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." Roe v. City of San Diego, 356 F.3d 1108, 1113 (9th Cir. 2004). Here, the government cannot satisfy its burden of showing a "compelling" reason why Mr. Kaczynski's personal papers and other seized documents should not be returned on his behalf for dissemination for review and study by academic scholars, historians, journalists, students, and members of the public.

Moreover, providing Kaczynski with a copy of his seized writings does not serve as an adequate substitute for the original documents under the First Amendment. As the University of Michigan's Special Collections librarian explained, "[f]or research and historical purposes, the original is always better than a copy." Declaration of John Balazs, filed October 10, 2003, at ¶6. Rather than repeating the arguments here, Kaczynski also incorporates by reference the portion of the appellate brief of Amici that persuasively argued that "Kaczynski's original writings have intrinsic historical and scholarly value that photocopies lack." Brief of Amici, at 6-11 (excerpt attached as Exhibit A). Thus, the Court should order the government to return Kaczynski's original seized writings rather than permit them to be sold at public auction.

**2. Even If The Court Permits Sale Of Kaczynski's Original Seized Writings, The Government's Plan To Redact Information From Kaczynski's Writings Before They Are Auctioned Violates Federal Law And The First Amendment.**

The Court should order that no documents be redacted before being returned to Kaczynski or sold at auction, unless the government can prove that it is unlawful to possess the redacted portions. This is supported not only by the rule that all items except per se contraband or those subject to forfeiture proceedings be returned to the defendant or sold pursuant to a valid restitution order, see United States v. Martinson, 809 F.2d 1364, 1369 (9th Cir. 1987), but also on First Amendment grounds, as set forth in the preceding section and in Kaczynski's objections to the Amended Status Report, filed May 26, 2006, at pages 8-10.

In the government's plan and the victims' statement, the parties assert a number of reasons for redacting the documents, such as that some writings are allegedly "undesirable," "dangerous," would wound the sensibilities of the victims and their families, and would infringe their privacy. None of these reasons show Kaczynski's writings to be unlawful to possess or otherwise give the government the blanket right to censor them and keep them hidden from the public. The fact that certain communications are offensive to some people can never justify the government in restricting speech. United States v. Eichman, 496 U.S. 310, 319 (1990) ("If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); Street v. New York, 394 U.S. 576, 585 (1969); Texas v. Johnson, 491 U.S. 397, 408-09 (1989). This is true even when the speaker has been convicted of a crime and the persons

offended by his communications are his victims. Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 117 (1991) ("The Board disclaims, as it must, any state interest in suppressing descriptions of crime out of solicitude for the sensibilities of readers. . . . The Board thus does not assert any interest in limiting whatever anguish Henry Hill's victims may suffer from reliving their victimization."). And the fact that the writings might infringe the victims' privacy does not make them unlawful to possess or justify the extensive redactions advocated by the government. Rather, at most, a less restrictive remedy would be appropriate, such as keeping the portions of the writings with specific address or contact information sealed until the year 2050.

Nor do the government's remaining grounds justify redaction. The government's argument that some writings may potentially put instructions on bomb-making into the hands of criminal and terrorists does not justify censoring Kaczynski's papers. See Bradenberg v. Ohio, 395 U.S. 444, 447 (1969) (under constitutional guarantees of free speech and free press the government cannot forbid speech advocating the use of force or violation of the law unless such speech is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). Information about how to make explosives is readily available in libraries and online, such as in the Encyclopedia of Chemical Technology and the Anarchist Cookbook.[2] Similarly, the fact that some writings allegedly may endanger persons on a long outdated, so-called target list does not justify censorship.

---

[2] For example, undersigned counsel found versions of the Anarchist Cookbook, with instructions for making explosives, available for sale on amazon.com.

There has been no showing that possession of the list is unlawful and restricting the information contained therein would violate the First Amendment. Id. In any case, the government's claim that making the list public would endanger persons named therein is wholly speculative and unsupported by anything in the record.

Further, even if the redaction of Kaczynski's writings were legally justifiable, the government cannot carry out the redaction unilaterally, but only after input from Kaczynski on each specific redaction. Absent Kaczynski's concurrence, the government must prove in court, item by item, that each redaction is justified under the law. Otherwise, to allow the government to decide unilaterally what is to be redacted, would give the government unbridled discretion to censor Kaczynski's writings, in contravention of the First Amendment.

### 3. Alternatively, The Court Should Order The Government To Provide Kaczynski With A Complete Copy Of His Writings.

Alternatively, if the Court were to permit the government to sell Kaczynski's original seized writings, the Court's order should require the government to provide Kaczynski a complete, legible copy of his writings. First, as a result of the serious First Amendment implications at issue as discussed in the preceding sections, Kaczynski should be given a complete copy of his writings so as not to suppress his or the public's First Amendment free speech rights. See also Fed. R. Crim. P. 41, Advisory Comm. Notes, 1989 Amendments (noting that, even in ongoing criminal proceedings, reasonable accommodations may permit documents to "be returned to their owner as long as the

government preserves a copy for future use").[3] Second, the restitution lien covering Kaczynski's property certainly does not apply to copies of his writings. Indeed, the government has claimed in a number of pleadings that it was not seeking to censor Kaczynski's ideas or to bar him from obtaining copies of his writings. See Gov't Objections To Magistrate Judge's Findings and Recommendations, filed Jan 30, 2004, at 9-12; id. at 9-10 ("there is simply no basis for finding that the United States is trying to censor or suppress Kaczynski's ideas. . . . He and/or his attorneys have copies of his writing and the government is not attempting to suppress his ability to express himself. There is nothing on the record that shows that the United States has requested those documents be returned to it because it has not."); Brief of Appellee United States, U.S.C.A. No. 04-10158, Jan. 24, 2005, at 12 ("the United States has not tried to assert any control over those copies; and Kaczynski is free to instruct his counsel to send those documents to the University of Michigan (and evidently has done so at least with respect to some documents)"; id. at 24 (in arguing against Kaczynski's First Amendment claim to his original writings, government

---

[3] The copy of some of his seized documents that were provided in discovery to Kaczynski's defense team in the underlying criminal action cannot serve as an adequate substitute for a complete copy of all of his seized documents because they do not comprise a legible and complete set of all the documents seized by government agents from Kaczynski's cabin. For example, the record contains an example of the poor quality of some of the copies provided to the defense, see Kaczynski's Reply To Government's Objections To Magistrate Judge's Findings and Recommendations, filed Feb. 12, 2004, Exhibits C & D, and other discovery copies appear to have been "doctored" in the sense that, where writing was illegible or cut off from a page in the copying process, someone simply handwrote in the missing words--correctly or incorrectly--instead of re-copying the page. An example of the incompleteness of the documents provided in discovery is shown in the copies provided of pages from a loose-leaf notebook of a handwritten draft of a mathematical paper that contained the solution to an old, extremely difficult mathematical problem that took Kaczynski years to solve. Id. Exh. D.

contended that "[b]oth Kaczynski and the Amici ignore the option of copies of Kaczynski's documents being presented to the library by Kaczynski's lawyers").[4] The government should be bound by its prior representations and should be estopped now from arguing against Kaczynski's request for a complete copy of his seized writings. See United States v. Garcia, 37 F.3d 1359, 1366 (9th Cir. 1994) (doctrine of judicial estoppel precludes a party from taking inconsistent positions in the same litigation), cert. denied, 514 U.S. 1067 (1995). Thus, if the Court permits the government to sell Kaczynski's original documents, the Court should also require the Government to provide Kaczynski with a complete copy of his seized writings before any sale occurs.

**4. Any Sale of Kaczynski's Original Papers Does Not Affect Kaczynski's Right To Publish The Materials.**

Finally, regardless whether the government may sell Kaczynski's original papers, the restitution lien does take away Kaczynski's literary rights to his papers. 17 U.S.C. § 201(e).[5] Thus, any sale of

---

[4] Indeed, the Ninth Circuit's decision not to reach the First Amendment issue raised by Kaczynski (417 F.3d at 972 n.1) was likely influenced by the government's position that it was not suppressing Kaczynski's writings or First Amendment rights because copies of his documents were freely available.

[5] 17 U.S.C. § 201(e) states in full:

> (e) Involuntary transfer. When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

his physical papers does not bar Kaczynski from potentially publishing his papers at a later date, so long as he gives the proceeds to the victims. The plea agreement provides further support for the position that the government has agreed that Kaczynski could sell his writings and "disgorge" any profit to the victims towards restitution.[6] Thus, any order concerning the sale of Kaczynski's seized writings should make clear that such sale covers only the physical papers, and neither confers copyright protection nor affects Kaczynski's right to publish the papers.

## III. CONCLUSION

For these reasons, the Court should reject the government's plan for the sale of Kaczynski's seized property and order the property returned to him.

Dated: July 21, 2006

Respectfully submitted,

/s/ John Balazs
JOHN BALAZS

Attorney for Defendant
THEODORE JOHN KACZYNSKI

---

[6] The relevant paragraph of the plea agreement in this case states as follows:

> **Disgorgement of Future Earnings:** The defendant agrees that he shall disgorge any monies paid in whole or in part to him or on his behalf, in return for writings, interviews, or other information disclosed by the defendant, including but not limited to access to the defendant, photographs or drawings of or by the defendant or any other type of artifact or memorabilia to the United States Probation Office for restitution or other distribution to the victims of the Unabomb events.

Memorandum of Plea Agreement, filed Jan. 22, 1998, at 4.