THEODORE JOHN KACZYNSKI, PRO SE
04475-046
U.S. PENITENTIARY MAX
P.O. BOX 8500
FLORENCE CO 81226-8500
Telephone 719-784-9464

FILED
MAY -9 2011
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY CLERK

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA
(Sacramento Division)

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>v.<br>THEODORE JOHN KACZYNSKI<br>Defendant | Case No.<br>2:96-cr-00259-GEB-GGH |

# URGENT

# DEFENDANT'S MOTION FOR RETENTION OF EVIDENCE

BAIL STATUS: Kaczynski is serving a life sentence.

There has been no previous application for <u>exactly</u> the same relief as requested here.

<u>URGENCY</u>. For reasons that will be apparent from the content of this Motion, the Motion needs to be decided before the government's sale of my property begins on 5/18/11.

I would have filed this Motion sooner, but I had to prepare a reply brief, due 5/4/11, in 9th Cir. Case No. 10-10495.

<u>JURISDICTION</u>. It's not clear to me who has jurisdiction over this Motion, which deals with matters closely related to, but not identical with, those of my current appeal to the 9th Cir., No. 10-10495. That appeal possibly deprives the District Court of jurisdiction, but since the issues raised in this Motion have not been decided by the District Court, the 9th Cir. may likewise lack jurisdiction.

But <u>someone</u> ought to have jurisdiction

over this Motion, so I am sending this same Motion both to the District Court and to the 9th Cir.

<u>FACTS</u>. This Motion is motivated by a very recent and unexpected development.

On 4/27/11 I received a visit from two "SIS" officers of this prison, Ms. Krist and Mr. McAllister, who told me that the Chicago office of the FBI wanted a sample of my DNA to compare with some partial DNA profiles connected with a 1982 event in which someone put potassium cyanide in Tylenol. The officers said the FBI was prepared to get a court order to compel me to provide the DNA sample, but wanted to know whether I would provide the sample voluntarily.

I told the officers that I wanted to think about the FBI's request before giving my answer. Later the same day, 4/27/11, I sent the officers a written answer in which I said I would give the DNA sample voluntarily, if the

FBI would satisfy a certain condition that is not relevant here.

I have never even possessed any potassium cyanide. But, even on the assumption that the FBI is entirely honest (an assumption I'm unwilling to make), partial DNA profiles can throw suspicion on persons who are entirely innocent. For example, such profiles can show that 5%, or 3%, or 1% of Americans have the same partial profile as the person who committed a certain crime.

If it happens by chance that I fit one of the partial DNA profiles that the FBI has in relation to the 1982 cyanide incident, then it will be not only to my advantage, but to the advantage of society in general, to resolve correctly the question of any putative connection between me and the cyanide incident.

For this purpose, some of the evidence seized from my cabin in 1996 may turn out to be important. Therefore:

RELIEF SOUGHT. I request that this Court order the government to refrain from disposing of, and instead to retain until my death, some of the evidence seized from my cabin in 1996, and related information, as follows ( (1) through (6)):

(1) The government should retain all lists and records of evidence seized from my cabin, because these lists and records will show whether any known cyanide compounds were found in my cabin.

(2) The government should retain all records of chemical analyses performed on substances found in my cabin, because such records will reveal whether any of the analyses detected cyanide compounds.

(3) The government should retain all powders, liquids, granulated materials, mixtures, and other materials of a possibly chemical nature that were found in my cabin, so that these can be chemically analyzed or re-analyzed, as may in future turn

out to be appropriate, to determine whether they contain any cyanide compounds.

(4) The government should retain the originals of the following written materials, because they may provide evidence of my whereabouts in 1982, or evidence as to whether I ever committed any illegal acts involving cyanide:

(a) All materials written in code (together with the keys to the codes), because the majority of the coded materials were devoted to descriptions of my illegal acts. These materials will show whether I ever committed any illegal acts involving cyanide.

(b) All letters received or sent by me that may date from 1982 or later, because they may provide evidence as to my whereabouts and activities during 1982.

(c) All parts of my journals that may date from 1982 or later, because they may provide evidence as to my whereabouts and activities during 1982.

(5) If the Court declines to order the government to retain the materials referenced under (4), then as a fallback position I request:

(i) that the government be ordered to retain photocopies of all of the written materials listed under (4), each page of the photocopies to be marked with some form of endorsement sufficient to guarantee its authenticity in such a way that it will be accepted as legally valid, admissible evidence in any future judicial proceeding; and

(ii) that the government be ordered to provide my designee, Julie Herrada, with photocopies of all of the written materials listed under (4), each page to be authenticated in the manner described under (i); and

(iii) that the government be ordered to retain a record of the names and addresses of all purchasers of written materials listed under (4).

(6) In stating (5) as a fallback position from (4), I do not concede that anything less than (4) will adequately

protect my rights, nor do I waive or forfeit my right to appeal, or otherwise to challenge, the Court's denial of (4), even if the Court grants my fallback position (5).

<u>CONFIRMATION OF FACTS</u>. At the moment I cannot provide written confirmation from Ms. Krist or Mr. McAllister of the facts stated supra, at 3-4. I am at present trying to secure such confirmation. If and when I obtain it, and sufficient copies of it, I will promptly forward a copy to this Court.

Meanwhile, since this Motion needs to be decided before the sale of my property begins on 5/18/11, the Court may wish to confirm my statement of facts by calling the phone number of this prison, 719-784-9464, and asking to speak with Ms. Krist or Mr. McAllister in "SIS". Alternatively, the Court may wish to contact the Chicago office of the FBI.

<u>REQUEST FOR COUNSEL</u>. Since the issues raised in this Motion are ancillary to my criminal case, E.D. Cal. No. 2:96-cr-00259-GEB-GGH, I believe I am entitled to representation under 18 USC § 3006 A (c). Therefore I request the appointment of counsel to represent me in regard to the issues raised in this Motion.

I prefer representation by John Balazs, <u>if</u> Mr. Balazs feels he has time to represent me adequately in relation to these issues. If Mr. Balazs does not feel he has time, or if for any other reason he prefers not to represent me, then I would like to be represented by someone whom Mr. Balazs may recommend.

Dated: May 5, 2011

Respectfully submitted,
Theodore John Kaczynski
THEODORE JOHN KACZYNSKI

# PROOF OF SERVICE

On May 5, 2011, at the United States Penitentiary Administrative Maximum Facility at Florence, Colorado, by United States Mail and using the prison's internal mailing system designed for legal mail, I served a copy of this MOTION FOR RETENTION OF EVIDENCE upon

UNITED STATES ATTORNEY
EASTERN DISTRICT OF CALIFORNIA
501 I STREET, SUITE 10-100
SACRAMENTO CA 95814

In the same envelope with the copy of this MOTION, I sent the United States Attorney a covering letter dated May 5, 2011. First-class postage was prepaid.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 5, 2011.

Theodore John Kaczynski
THEODORE JOHN KACZYNSKI